# WILLIAM C. KREGEL v. CHARLES H. CIRKLER.[1]

February 8, 1924.

No. 23,731.

**Books of account of vendor inadmissible to show no profit in business.**

1. The books of the defendant, sought to be introduced by the plaintiff as proof that he had not made a profit in a drug store business, as represented by him when he sold to the plaintiff, were properly rejected upon the ground that they failed to show that the representation was untrue.

**Evidence of disproof of profit insufficient.**

2. The omission to make an income tax return may be shown as an admission that a profit was not made; but the proof tendered was so uncertain that an instruction to disregard it was not error. And the books of account mentioned in the preceding paragraph, and the failure to make an income tax return, constituting the only evidence in disproof of profit, the court properly excluded the consideration of fraud.

**Finding sustained by evidence.**

3. The evidence sustains a finding that the defendant did not misrepresent the amount of "cut-rate" business or the amount of "dead" stock.

**Sale not rescinded by consent of parties.**

4. The evidence sustains a finding that the plaintiff and the defendant did not rescind the sale by mutual consent.

**Inventory.**

5. An inventory, somewhat uncertain on the proof offered as to whether it contained all the merchandise in the store, and lacking in proof of the value of the larger part of the merchandise inventoried, *held* insufficient to prove value.

[1]Reported in 198 N. W. 664.

AFTER REARGUMENT.

May 2, 1924.

**Books of account.**
    6.  Upon reargument the court adheres to its holding in paragraphs
1 and 2 of the opinion relative to the books of account of the defend-
ant and his payment of an income tax.

**Inventory of stock admissible in evidence—competent evidence of its value.**
    7.  Upon reargument the court finds that it was in error in holding
in paragraph 5 that there was no evidence of the value of some of the
merchandise included in the inventory received in evidence.  It now
holds that there was competent evidence of such value.  Whether the
inventory was taken under such circumstances as to entitle it to ad-
mission in evidence, values being proved, was left undecided.  It is
now held that it was properly received.

Action in the district court for Hennepin county to recover
$13,000.  The case was tried before Leary, J., who submitted to a
jury the questions referred to in the third paragraph of the opinion,
made findings and ordered judgment in favor of defendant and a
decree ordering a foreclosure of the chattel mortgage.  From an
order denying his motion for a new trial, plaintiff appealed.
Affirmed after reargument.

*Lundeen & Lundeen,* for appellant.
*Roberts & Strong* and *Karl H. Covell,* for respondent.

DIBELL, J.
Action to recover, upon the ground of fraudulent misrepresenta-
tions, the amount paid by the plaintiff for a drugstore stock and a
leasehold, and to cancel the note and chattel mortgage and the
mortgage on the leasehold given for the unpaid portion of the
purchase price.  The defendant, denying the fraud, asked the fore-
closure of the chattel mortgage and the mortgage on the leasehold.
Certain issues were submitted to a jury.  There were findings against
the plaintiff, and a decree for foreclosure of the chattel mortgage

and the mortgage on the leasehold. The plaintiff appeals from the order denying his motion for a new trial.

The plaintiff bought the defendant's drug store in Minneapolis, including the leasehold of the property on which it was located, on May 1, 1921, for $60,000. Of this sum $10,000 was paid in cash, and a note was given for $50,000, payable $500 per month, secured by a chattel mortgage on the stock and a mortgage on the leasehold. The plaintiff claims that the defendant fraudulently represented that the drug store was producing a profit of $300 per month; that there was no substantial amount of "cut-rate" business; and that there was no amount of "dead" stock.

The court held that there was no proof that the plaintiff did not make so great a profit as $300 per month. No finding upon the question of misrepresentation of the profit was submitted to the jury or made by the court. On October 1, 1921, the defendant took possession of the drug store. The plaintiff claims that he did so upon a voluntary rescission of the parties on agreed terms. The defendant claims that the plaintiff substantially abandoned the property, that he did not agree upon a rescission, and that he took possession to protect his mortgage. Issues substantially as follows were submitted to a jury:

(1) Did the plaintiff make any representations as to the "cut-rate" business and the amount of "dead" stock?

(2) If they were made, did the plaintiff rely upon them?

(3) If they were made, were they false?

(4) Did the defendant, when he took possession in October, 1921, consent to a rescission of the sale?

(5) Did the plaintiff deliver to the defendant the stock in substantially the same condition in which it was received by him on May 1, 1921?

(6) Did the plaintiff rescind or attempt to rescind within a reasonable time?

All were answered in the negative. Not all of them are material in view of the finding that there was no fraud.

1. In proof that he was not making so great a profit as $300 per month the plaintiff offered the defendant's books of account.

Upon objection the court excluded them. They are included, by reference, in the settled case, though not returned to this court. They show, as we gather from the record, purchases and receipts, but there is no inventory, and nothing, so far as we find, from which it can be determined that he was not making the profit which the plaintiff claims that he represented.

2. It is claimed that the court erred in charging the jury to disregard the evidence as to the defendant's income tax. His books showed that in March, 1921, he paid an income tax of $305.10 for 1920. The evidence is indefinite, but the plaintiff claims that it shows, at least inferentially, that he paid no taxes for 1921.

An omission to pay an income tax may be an admission that no profit was made. We have held that an admission to list property of which one afterwards asserts ownership is a circumstance against his claim, and that the fixing of values by the owner is an admission. See Thaden v. Bagen, 139 Minn. 46, 165 N. W. 864 and cases cited; Rosenberger v. H. E. Wilcox Motor Co. 145 Minn. 408, 177 N. W. 625; Vernon Shell Road Co. v. Mayor of Savannah, 95 Ga. 387, 22 S. E. 625; 3 Wigmore, Ev. § 1640. The principle invoked here is not different.

The defendant drew money from his business as he wanted it and it was charged to his personal account. Nothing is shown as to other business, or other factors which might affect his income tax. A large return would not indicate that all came from his drug store business, or a small one that there was no profit. The question is indifferently raised, perhaps not sufficiently raised, and with no further showing there was no error.

The proof of value was confined to the books of account and the failure to make an income tax return. The court therefore was right in excluding the claimed misrepresentation of profits as a basis of recovery.

3. That representations were made as to "cut-rate" business and "dead" stock is conceded. The issues relative thereto were submitted to the jury without objection, upon the theory that misrepresentations were meant. That was the theory upon which the

trial was conducted. The evidence sustains the jury's finding that there was no misrepresentation.

When the first question, understood as explained by the court, was answered in the negative, there was nothing left to the plaintiff's case, unless there was a voluntary rescission. Besides, the answer to question 3 negatived falsity. With the findings so, errors claimed by the plaintiff in the charge, for instance as to instructions upon reliance, are unimportant.

4. The answer to the fourth question is sustained by the evidence. There was a dispute between the parties as to whether they agreed to rescind, there was evidence on both sides, and the finding of the jury ends the controversy.

5. The court found that the stock was worth $35,908.88 on October 1, 1921. This finding is important upon the defendant's theory that when a sale is made upon the foreclosure of the chattel mortgage an amount of stock equal in value to the value of the stock on October 1, 1921, must be offered for sale.

The proof of the value is based upon an inventory taken immediately after October 1. Apparently it was taken by competent men. The evidence, though meager and unsatisfactory, tends to prove that a fairly complete inventory of the merchandise on hand was taken, though we do not now pass upon its sufficiency. There was proof of the value of some of the merchandise. Of most of it there was none. The price-fixer of most of the values did not testify. The inventory was insufficient as proof of value within either Itasca Cedar & Tie Co. v. McKinley, 124 Minn. 183, 144 N. W. 768, or Knopfler v. Flynn, 135 Minn. 333, 160 N. W. 860, Ann. Cas. 1918E, 538.

The fifth question, referring to the relative value of the business on May 1, 1921, and on October 1, 1921, submitted to the jury, is of no present importance.

The sixth question, in view of the finding that there was no fraud, has no place in the case, for there was no right of rescission.

There should not be a retrial of all the issues. The plaintiff has failed to prove that he is entitled to relief on his cause of action. The findings in respect thereto should stand. There should be a

new trial of the defendant's counterclaim for a foreclosure of his chattel mortgage and the mortgage on the leasehold. The order is reversed, and the case remanded for the purpose stated.

Reversed with directions.

AFTER REARGUMENT.

On May 2, 1924, the following opinion was filed:

DIBELL, J.

Both the plaintiff and the defendant moved for a reargument. The following order was entered:

"A rehearing is granted the defendant upon the question, reference to which is had in paragraph 5 of the opinion, whether the inventory of October, 1921, was sufficient as proof of value. This includes the question as to the sufficiency of the listing of the merchandise in the inventory, the opinion suggesting but not deciding its sufficiency, and the question of valuation.

"The plaintiff is granted a reargument upon the question whether the drug store was making a profit of $300 per month. This includes the effect of the omission to make an income tax return, to which reference is made in paragraph 2 of the opinion, to which the plaintiff's motion is specifically directed, and also the admissibility and effect of the books of account of the defendant, referred to in paragraph 1 of the opinion, bearing upon the claim that the profits were less than $300 per month."

Counsel submitted printed briefs and were heard orally. We refer first to the points upon which a reargument was granted the plaintiff, and then to those upon which a reargument was granted the defendant.

6. The books of account were properly excluded. They did not show the amount of stock at any time. There was no inventory, except one taken about the time of the plaintiff's purchase. There was not an earlier one with which to compare it. The books were not supplemented by substantial proof of the amount of the value

of the stock at a material date for finding whether profits were being made as represented. It was proposed to put the books before the jury with nothing to supplement them in ascertaining whether there were profits. To be of aid there must have been a somewhat definite showing of value of stock, at a date before the purchase, and an analysis of the books. All this was lacking. We adhere to our former view, expressed in paragraph 1, that the books were properly excluded.

We have reconsidered our holding as to the income tax, referred to in subdivision 2. We adhere to our former view, without further discussion, that the evidence was so indefinite and its effect so uncertain that an instruction to disregard it was not error.

The court did not err in excluding evidence as to misrepresentations of profits.

7. In subdivision 5 of the opinion, referring to the October, 1921, inventory, the court said:

"There was proof of the value of some of the merchandise. Of most of it there was none. The price fixer of most of the values did not testify."

There was evidence of the value of the surgical instruments and supplies. This the court had in mind when it said that there was proof of the value of some of the merchandise. The court was in error when it said that there was no proof of value of most of the merchandise and that the person who priced it did not testify. The evidence shows that a competent witness fixed the values on this merchandise. In not giving effect to his testimony the court erred and its conclusion upon which the reversal was based was wrong.

The court left undecided the question whether the inventory, the items being properly priced, was taken under such circumstances as to authorize its admission in evidence, and that question is now for decision.

The plaintiff abandoned the store about October 1, 1921, claiming a rescission. Notice was given the defendant who took possession. He obtained the services of men who were experienced in making inventories. There were 10 or 12 of them. Only two testified. One

had charge of the inventory of the surgical instruments and supplies and he priced them. The other had charge of the inventory of the rest of the merchandise. He superintended the making of it, to some extent checked the work of the others, and was of the opinion that all of the articles were included in it. He did not do the pricing. That was done by the witness whose testimony was not given effect in reaching the former decision. The inventory would be more satisfactory and less likely to contain error if all participating in its making had testified, but there was a sufficient foundation, considering the circumstances involved in its taking and the purpose of its use, to justify its admission in evidence. In reaching this conclusion we have considered again the cases cited in the former opinion.

We were not in error in our holding in subdivisions 1 and 2 of the opinion. We were in error in our holding in subdivision 5 upon which the order of reversal was made.

The order of reversal is set aside and the order from which the appeal is taken is affirmed.

Order affirmed.