### WESTFIELD INSURANCE COMPANY, Appellant,

v.

### Stephen J. KROISS, et al., d/b/a S. Kroiss Homes, Respondents.

No. A04–1330.

Court of Appeals of Minnesota.

April 5, 2005.

Deborah C. Eckland, Goetz & Eckland, P.A., Minneapolis, MN, for appellant.

Rikke Dierssen–Morice, Faegre & Benson, L.L.P., Minneapolis, MN, for respondents.

Jocelyn L. Knoll, Fabyanske, Westra & Hart, P.A., Minneapolis, MN, for amicus curiae.

Considered and decided by RANDALL, Presiding Judge; MINGE, Judge; and WRIGHT, Judge.

## OPINION

MINGE, Judge.

Appellant insurer challenges the district court's finding that it had a duty to defend respondents homebuilders against lawsuits for water damages allegedly caused by defective construction. Respondents contend that the district court erred by not allowing them to recover attorney fees in the declaratory judgment action to determine appellant's duty to defend. Because we conclude that appellant breached its duty to defend, we affirm in part. Because we conclude respondents' attorney fees from the declaratory judgment action are damages arising from that breach, we reverse in part and remand.

## FACTS

Respondents Stephen J. Kroiss and Stephen R. Kroiss d/b/a S. Kroiss Homes are in the business of residential construction. Respondents purchased commercial general liability insurance from appellant Westfield Insurance Company that covered the period from October 8, 1993 through May 15, 1995. The insurance was an occurrence policy, which included a duty to defend and to indemnify for property damage that occurred during the policy.

Seven homeowners brought actions against respondents alleging construction

defects for homes built during the period when appellant's policy covered respondents. Each of these actions asserted that allegedly defective construction by respondents had caused water intrusion damage. In some of the cases, respondents attempted to remedy the problem after the homeowners moved in, but water damage was still observed at the time these lawsuits were brought. None of the complaints state when the water damage occurred.

Respondents tendered these lawsuits to appellant and appellant refused to defend the suits. Two other insurers who issued later policies agreed to defend the lawsuits, reserving their rights. After repeated requests by respondents for appellant to reconsider and assume defense of the lawsuits, appellant initiated this declaratory judgment action seeking to establish it had no duty to defend or to indemnify respondents. Respondents filed a counterclaim for a declaratory judgment that appellant owed a duty to defend and indemnify respondents, that appellant breached those duties, and that appellant owed respondents' attorney fees because it had breached its duty to defend.

The district court denied appellant's motion for summary judgment and granted respondents' motion for partial summary judgment holding that appellant had a duty to defend respondents in the underlying actions. The summary judgment order was appealed to this court, and we dismissed the appeal on jurisdictional grounds and remanded.

On remand, the district court denied respondents' motion for attorney fees and certified for interlocutory appeal to this court the question of the duty to defend. The present appeal is pursuant to that certification. In the memorandum accompanying its order, the district court stated that because attorney fees had not been granted, the respondents "suffered no damages as a direct loss incident to the breach of contract." In an affidavit, respondents' attorney attached a billing statement that indicated that respondents' attorney was required to communicate with the other insurers who had agreed to defend respondents in the underlying suit. The communications were about respondents' potential liability for gaps in coverage due to appellant's refusal to participate in the defense.

## ISSUES

I. Did the district court err by holding that appellant had a duty to defend the respondents in the claims brought against him by the homeowners?

II. Did the district court err by denying respondents' motion for attorney fees?

## ANALYSIS

■ When reviewing a summary judgment award, this court must determine whether there are any genuine issues of material fact and whether the district court was correct in its application of the law. *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn.App.1993), *review denied* (Minn. Apr. 29, 1993). On review of a grant of summary judgment, this court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 183 (Minn.App.2001). The construction of an insurance policy is a question of law, subject to de novo review. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn.2003); *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 886–87 (Minn.1978).

## I.

The first issue is whether appellant has a duty to defend respondents in the underlying action. Appellant contends that because there is no direct indication that the damage occurred during the time of appellant's policy, the lawsuits are not arguably within the scope of coverage.

The duty to defend an insured is broader than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Nat'l Computer Sys., Inc.,* 490 N.W.2d 626, 631 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992). The duty to defend a claim against an insured "arises when any part of the claim is 'arguably' within the scope of the policy's coverage." *Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 165 (Minn.1986). Usually, a duty to defend is determined by comparing the complaint with the policy language. *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 316 (Minn.1995). However, if the insurer has knowledge of facts outside the complaint, it can use these to determine coverage. *Id.* An insurer who seeks to avoid the duty to defend has the "burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." *Jostens,* 387 N.W.2d at 165–66.

To determine if a particular policy is triggered by an occurrence, there must be an actual injury. *N. States Power Co. v. Fid. and Cas. Co. of N.Y.,* 523 N.W.2d 657, 662 (Minn.1994). This means that there must be damages during the period of policy coverage. *Id.* However, the injury need not be diagnosable, compensable or manifest when the policy is in force. *In re Silicone Implant Ins. Coverage Litig.,* 667 N.W.2d 405, 415 (Minn.2003). In situations where damages may be spread over a period of time and therefore implicate different insurers, Minnesota courts have either spread the liability among the different insurers if the damages were the result of continuing events or assigned the liability to the insurers based on the period of time when the main event and primary damages occurred. *See Silicone Implant,* 667 N.W.2d at 422; *SCSC,* 536 N.W.2d at 318; *N. States Power Co.,* 523 N.W.2d at 664.

Appellant contends that because the complaints do not specifically allege that damages occurred during the time of appellant's policies and respondents have provided no evidence that damages occurred at that time, appellant does not have a duty to defend. Generally where questions of fact need to be discovered to determine if an insurer has a duty to indemnify, a duty to defend exists. *See, e.g., Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 391 (Minn.1979) (holding that duty to defend exists despite uncertainty over who had dominion or control over a backhoe at the time of the accident); *Reinsurance Ass'n of Minn. v. Timmer,* 641 N.W.2d 302, 311–15 (Minn.App.2002) (holding that a complaint for fraud and consumer fraud can be reasonably construed to include negligent misrepresentation, which would be covered as a non-intentional act), *review denied* (Minn. May 14, 2002).

Here, all of the homeowners assert that due to defective construction by respondents during the time of appellant's coverage, water damage occurred. Since the faulty construction allegedly allowed water to seep into the homes, damage could have began when appellant's policies were in force. In the cases where damages have occurred continuously or repeatedly over time, the courts have considered the entire time in which damages could have occurred before deciding when to actually assess liability. *See Silicone Implant,* 667 N.W.2d at 422; *SCSC,* 536 N.W.2d at 317–18; *N. States Power Co.,* 523 N.W.2d at 664. Whether damages in this case actual-

ly occurred within the policy coverage period is a question of fact that would have to be determined at a trial. Therefore, the damages arguably fall within the time of the policy. If the appellant wants to avoid the expense of defending this action, it has the burden to show that there was no damage at the time its policy was in force.

This conclusion is consistent with the Minnesota Supreme Court's decision in *SCSC,* 536 N.W.2d at 305. In that case the insured asked the insurer for indemnity and defense for groundwater contamination and cleanup costs on the basis that "[i]t is possible that the soil and groundwater contamination alleged by the MPCA began and continued throughout the coverage." *Id.* at 316. The court stated that this gave the insurer sufficient notice that a claim for arguable coverage had been presented. *Id.* In the present action, appellant claims that because the underlying complaints did not specifically allege that damage had occurred at the time of policy coverage, appellant did not have a duty to defend. However, because the complaints alleged damages arising out of defective construction that occurred at the time the policy was in force, the case before us is similar to the facts in *SCSC.* The result is that respondents in this case gave appellant notice that a claim for arguable coverage was presented.

## II.

The next issue is whether respondents should have been awarded attorney fees and costs for this declaratory judgment action based on appellant's breach of its contractual duty to defend respondents.

Unless there is statutory authority for it, legal fees ordinarily are not recoverable. *Morrison v. Swenson,* 274 Minn. 127, 137, 142 N.W.2d 640, 647 (1966). However, in an action to recover damages for breach of contract, legal fees incurred in a declaratory judgment action are "damages arising directly as the result of the breach." *Id.* at 138, 142 N.W.2d at 647. As a result, the rule is that "[t]he insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect-usually by wrongfully refusing to defend the insured." *Am. Standard Ins. Co. v. Le,* 551 N.W.2d 923, 927 (Minn.1996).

There is no question that respondents requested that appellant fulfill its duty to defend respondents in the underlying action and that appellant denied it had a duty to defend. Therefore, ordinarily under established caselaw respondents could recover their attorney fees from the subsequent declaratory judgment action. However, it appears that the district court denied respondents' motion for attorney fees because it believed that respondents had not suffered any damages as a result of the breach. The apparent lack of damages exists because the other insurers assumed the duty to defend respondents under a reservation of rights.

The district court cited *Rent–A–Scooter, Inc. v. Universal Underwriters Ins. Co.,* to support its conclusion that attorney fees not be awarded. 285 Minn. 264, 173 N.W.2d 9 (1969). The court in *Rent–A–Scooter,* considered a case where the insured, a scooter rental service, did not defend the underlying action, allowed a default judgment to be entered against it, and then sued the insurer in a declaratory judgment action to establish coverage under the policy. *Id.* at 266, 173 N.W.2d at 10. The court held that the insured could not recover attorney fees in the declaratory judgment action because the scooter rental service offered no defense in the action. *Id* at 269, 173 N.W.2d at 12. Appellant in the present case argues that

since respondents did not offer its own defense in the underlying action, respondents should likewise not be able to recover attorney fees. However, it is significant that the insurer in *Rent–A–Scooter* did not breach its duty to defend because the insured never tendered the lawsuit to it. *Id.* at 265, 173 N.W.2d at 10. Therefore, the rule of *Rent–A–Scooter* does not support the proposition that a party cannot recover attorney fees if after the insurer breaches its contractual duty to defend, other insurers undertake the insured's defense.

Other cases support respondents' recovery of attorney fees in this situation. In *Andrew L. Youngquist*, after one insurer refused coverage and another insurer undertook the defense in the underlying claim, the insured was able to recover the legal costs of the declaratory judgment. 625 N.W.2d at 187–88. In that case the insured did have damages because the insured was required to pay a $5,000 deductible to the insurer who undertook the defense. *Id.* at 187. In *Andrew L. Youngquist*, the insured was able to recover attorney fees even though the only cost it had in the underlying action was its insurance deductible. *Id.* It would be arbitrary and unfair to allow an insured that had incurred only a minimal loss for the deductible in the underlying suit to recover the potentially substantial attorney fee in the declaratory judgment action while another party, such as appellant, who was exposed to substantial loss in the underlying suit was unable to recover attorney fees.

*Silicone Implant* also discusses the difference between a contractual duty to defend and a duty to reimburse the insured for defense costs in an underlying action. 667 N.W.2d at 425. In that case the court did not allow the insured to recover attorney expenses in the declaratory judgment action because the insurer only had a duty

to reimburse. *Id.* at 423–25. The court held that the duty to defend was more extensive than the duty to reimburse, stating, "[T]he burden of litigation extends beyond the monetary costs of litigation and encompasses hiring attorneys and managing lawsuits." *Id.* The respondents in the action before us have the benefit of a policy that provides a duty to defend. The respondents have been required to manage the portion of the liability defense by communicating with the other insurers about settlement offers. An affidavit and attached documentation from respondents' counsel show time spent and hours billed by counsel to represent respondents in dealing with liability for the period respondents were covered by appellant.

We conclude that the attorney fees of the declaratory judgment action are damages arising directly from the breach of the duty to defend. But for the assertion of underlying claims by the homeowners, the attorney fees in the declaratory judgment action would not have been incurred. In this sense respondents' damages parallel the cost of defending against the claim and damages in the underlying action. The caselaw clearly states that where an insurer refuses to defend an insured after the insured has tendered the suit and a duty to defend is subsequently determined in a declaratory judgment action, the insured can recover the attorney fees for the declaratory judgment action. Therefore, we conclude that the respondents are entitled to recover their attorney fees in the declaratory judgment action.

## D E C I S I O N

Because the district court properly determined that the claims asserted against the respondents were arguably covered by appellant's policy, we affirm the district court's holding that the appellant had a duty to defend the respondents. However,

because the respondents' attorney fees in the declaratory judgment were damages arising out of appellant's breach of its duty to defend, we reverse the district court's denial of attorney fees and costs, and remand to the district court to determine the proper amount of those fees as damages.

**Affirmed in part, reversed in part and remanded.**