## ST. PAUL PROFESSIONAL EMPLOYEES ASSOCIATION v. CITY OF ST. PAUL.

226 N. W. 2d 311.

February 14, 1975—Nos. 45340, 45342.

*R. Scott Davies,* City Attorney, and *Terry Sullivan,* Assistant City Attorney, for appellant.

*Stearns, Jacobowski, Doffing, Hennessy & Peters* and *Daniel G. Jacobowski,* for respondent.

*Korstad & Olander* and *William B. Korstad,* for The Minnesota Association of Secondary School Principals, amicus curiae, seeking affirmance.

*Hall & Swanson* and *Dale G. Swanson,* for Minnesota Elementary School Principals Association, amicus curiae, seeking affirmance.

Heard before Otis, Peterson, Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

The primary issue for decision, exclusively a matter of statutory construction, is whether, under the provisions of the Public Employment Labor Relations Act of 1971, Minn. St. 179.61 to 179.77, a public employer, upon impasse in negotiations for a collective bargaining agreement with the certified representative of its supervisory employees and upon demand, must submit the unresolved issues to binding arbitration, irrespective of whether or not such employees might otherwise, as a matter of fact, be deemed nonessential employees. We hold in the affirmative. A secondary issue is whether, in judicial proceedings to determine that a refusal to arbitrate is an unfair labor practice and to enforce the statutory mandate of arbitration, a court may award attorneys fees as damages. We hold in the negative.

The public employer-employee disputants are, respectively, defendant, the city of St. Paul, hereafter "City," and plaintiff, St. Paul Professional Employees Association, hereafter "Association." Pursuant to the Public Employment Labor Relations Act of 1971, hereafter "the Act," the Association was duly certified by the State Bureau of Mediation Services, hereafter "Bureau," as the exclusive collective bargaining representative for a bargaining unit generally consisting of "white collar" supervisory

personnel.[1] Supervisory positions in the departments of engineering, finance, health, parks, and public works are illustrative of the general nature of the employment of these employees. It is undisputed that all of the employees involved are supervisors within the meaning of the relevant statutory definition of that classification.

■ The Association presented its formal collective bargaining proposals to the City in January 1974, and negotiations ensued for several months. Because the parties did not agree upon all issues either in direct negotiation or under the usual auspices of the Bureau, an impasse was "certified" by the Bureau in June 1974. Demand was then made upon the City for binding arbitration under the Act, but the City refused to do so, contending that the statute mandating such arbitration for "essential employees" was inapplicable to the supervisory employees in this unit.

Arbitration invoked by employees under the Act is of two kinds, depending upon whether, under the statutory frame of reference, public employees are "essential" or "nonessential." Nonessential employees may apply for submission of their unresolved bargaining demands to binding arbitration, but the employer is not required to agree to it; however, if the employer does not agree to such submission, the employees are accorded the right to strike. Essential employees similarly may invoke arbitration—but mandatory binding arbitration—the corollary of which is that they are not accorded a right to strike.

The original Act, as enacted in 1971, conferred upon public employees the right to organize for purposes of collective bargaining with their public employers, except that supervisory employees (together with confidential employees, principals, and assistant principals) were expressly excluded from its terms.

---

[1] Most "white collar" supervisors are included in this unit. However, by consent of the parties subsequent to enactment of amendments to the Act in 1973, professional employees were separated into a separate certified unit. Police and fire personnel, because of a history of separate bargaining, were likewise carved out from this unit.

However, L. 1973, c. 635, § 13, amended Minn. St. 1971, § 179.65, subd. 6, and removed this exclusion in these terms:

"Supervisory and confidential employees, principals and assistant principals may form their own organizations. An employer shall extend exclusive recognition to a representative of or an organization of supervisory or confidential employees, or principals and assistant principals, for the purpose of negotiating terms or conditions of employment, in accordance with all other provisions of Laws 1973, Chapter 635, *as though they were essential employees.*" (Italics supplied.)

We read this statute as a clear and unambiguous declaration of legislative intent that there is but one type of supervisory employee organization and that all such organizations are subject to the rights and limitations of essential employees. Supervisory employees may, therefore, invoke binding arbitration. We reject the parsed reading of other related statutes, principally Minn. St. 179.63, employed by the City to support its contention that the legislature evinced an intent to create separate units of essential supervisors and nonessential supervisors. We have not been made aware of any probable legislative purpose for making such a distinction. Once it is established that employees are supervisors in fact, as defined in § 179.63, they are as a matter of law to be considered for the purpose stated in § 179.65, subd. 6, "as though they were essential employees."

The City's refusal to proceed to arbitration was accordingly, as the trial court found, an unfair labor practice. We affirm the trial court's injunction ordering the city to comply.

■ We reverse, however, so much of the trial court's order as awards plaintiff the sum of $1,128.88 for its attorneys fees and expenses in this litigation. Counsel fees and expenses are not damages. The general and well-established rule is that attorneys fees are not allowed in civil actions unless authorized by statute. McRostie v. City of Owatonna, 152 Minn. 63, 188

N. W. 52 (1922); Abbey v. Farmers Ins. Exchange, 281 Minn. 113, 160 N. W. 2d 709 (1968).

Affirmed in part; reversed in part.